IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SAMEER SYED**, individually and on behalf of all other similarly situated, | § § § | |
| Plaintiff(s), | § § | |
| v. | § § | Civil Action No. **3:18-CV-2791-L** |
| **BETO FOR TEXAS; BETO O'ROURKE; and JOHN DOES 1-25**, | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Beto O'Rourke's Motion to Dismiss (Doc. 19), filed January 7, 2019. After considering the motion, briefs, pleadings, and applicable law, the court **denies** Defendant Beto O'Rourke's Motion to Dismiss (Doc. 19).

**I.     Factual and Procedural Background**

On October 19, 2018, Plaintiff Sameer Syed ("Syed"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), brought this collective action, against Beto for Texas for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. arising from text messages he received in 2018 from "Beto O'Rourke's campaign," which is also referred to as "Beto for Texas" ("BFT"). Pl.'s Compl. 1, 2, 8. On November 29, 2018, an amended complaint was filed, adding Beto O'Rourke, individually ("O'Rourke"), and John Does 1-25 as Defendants. Plaintiff's Amended Complaint mooted a previously filed motion by BFT to dismiss Plaintiff's TCPA claim. On January 7, 2019, O'Rourke moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' TCPA claim against him in his individual capacity. Syed

**Memorandum Opinion and Order – Page 1**

filed a response in opposition to the Motion to Dismiss on January 25, 2019, to which O'Rourke replied on February 22, 2019.

## II. Motion to Dismiss

### A. The Parties' Contentions

O'Rourke asserts that BFT is a "federally registered principal campaign committee," and that BFT moved to dismiss Plaintiff's TCPA claim under Rule 12(b)(6) after the 2018 election for "failure to plead a viable claim against BFT. Also, as the election was over, BFT's reason for existence as an association came to an end." O'Rourke Mot. 1 (citing Federal Election Commission Committee ID#C00501197 at fec.gov). O'Rourke contends that Plaintiff's TCPA claim is not legally viable because he cannot be personally liable for conduct of the political campaign that supported his candidacy. For support, O'Rourke cites *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1284-85 (5th Cir. 1994), which he acknowledges was superseded by statute, and Chapter 252 of the Texas Business Organization Code, which establishes the statutory rules for nonprofit organizations, including unincorporated associations.

O'Rourke asserts that, "per *Thornburg*, BFT is evaluated by the law governing unincorporated nonprofit associations, [and] Chapter 252 makes clear that O'Rourke is not liable for the torts committed by BFT or BFT's agents, regardless of his relationship to BFT." O'Rourke Mot. 5. O'Rourke, therefore, argues that, "even assuming Plaintiffs' allegations [are] true that someone working for BFT violated the TCPA, O'Rourke is not liable as a matter of law for that conduct," and Plaintiff has not alleged any other theory for holding O'Rourke personally liable. *Id.* In addition, O'Rourke contends that Plaintiff's pleadings impermissibly lump all Defendants together

by referring to them collectively as "Defendants" without differentiating between them and identifying which Defendant or Defendants engaged in the conduct alleged.

Plaintiff responds that O'Rourke was added as a party because BFT previously took the position that its status as an entity was terminated or dissolved after the 2018 election:

> I. At O'Rourke's direction BFT used a text messaging system called Relay that automatically generated text messages and sent them to Texas residents using a pool of outbound phone numbers provided by Relay. Furthermore, BFT posted a video on YouTube that showed how their volunteers and staff used Relay to send out automated text messages to Texas residents from a central calling system. When Mr. Syed called back the phone numbers associated with BFT's text messages, the calls resulted in error messages or disengaged dial tones. BFT's video shows that BFT's staff and volunteers did not use their own phone numbers or cell phones, they did not compose any text messages, and they did not dial any phone numbers as Relay automatically did everything.
>
> II. O'Rourke claimed that BFT had been terminated sometime shortly after the November 6th, 2018 election. If BFT is terminated or dissolved then it cannot shield O'Rourke from liability. BFT was sued and served with this lawsuit on October 22, 2018, prior to the election and before it allegedly terminated its existence. BFT and O'Rourke had actual knowledge of Mr. Syed's claims against BFT but BFT allegedly terminated and distributed its assets to unknown parties to avoid liability. O'Rouke and BFT are not separate as BFT has been terminated or dissolved. If there is no unincorporated nonprofit association the Tex. Bus. Orgs. Code Ann. § 252 cannot apply to protect O'Rourke from liability. Under Texas law if a nonprofit unincorporated association is terminated or dissolved then a general partnership is formed by default. If BFT is in fact terminated then O'Rourke is a partner in a general partnership and is subject to liability as partner in a general partnership under Tex. Bus. Orgs. Code Ann. § 152. O'Rourke cannot have it both ways where he cannot be personally liable and at the same time be allowed to terminate BFT to avoid all liability.

Pl.'s Resp. 3-4.

O'Rourke replies that, while Plaintiff asserts that BFT or others engaged in conduct "[a]t O'Rourke's direction" in an effort to imply he had knowledge of and involvement in the decision to use an automated text messaging system, this quoted phrase does not appear anywhere in

Case 3:18-cv-02791-L   Document 32   Filed 09/04/19   Page 4 of 10   PageID 208

Plaintiff's Amended Complaint, and Plaintiff's pleadings do not include any reference to conduct by O'Rourke in his personal capacity. O'Rourke, therefore, maintains that Plaintiff has not set forth any viable reason for circumventing the express bar to personal liability under Chapter 252 of the Texas Business Organization Code, and he does not dispute in response to the motion to dismiss that "BFT is properly considered an unincorporated nonprofit association" for purposes of Chapter 252.

### B.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the

**Memorandum Opinion and Order – Page 5**

plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

    C.    **Analysis**

The TCPA prohibits "mak[ing] any call (other than a call for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA's prohibition on automatic telephone dialing systems 'encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls.'" *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 545-46 (W.D. Tex. 2017) *(*quoting In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003)).

The personal liability of a federal political candidate for a political committee's conduct is governed by state law. *Karl Rove & Co.*, 39 F.3d at 1282. Under the Texas Uniform

**Memorandum Opinion and Order – Page 6**

Unincorporated Nonprofit Associations Act ("TUUNAA"), "[a] nonprofit association is a legal entity separate from its members for the purposes of determining and enforcing rights, duties, and liabilities in contract and tort." Tex . Bus. Orgs. Code Ann. § 252.006(a). TUUNAA abrogated common-law individual liability for members of a nonprofit association. *Greco v. National Football League*, 116 F. Supp. 3d 744, 759 n.9 (N.D. Tex. 2015) (citing *MT Falkin Invs. v. Chisholm Trail Elks Lodge No. 2659*, 400 S.W.3d 658, 667 (Tex. App.— Austin 2013 pet. denied)). Before the enactment of TUUNAA, "the individual liability of a member [was] based on [the member's] actual participation in the tort or ratification of the actions which cause injury." *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 174 (Tex. 1992) (Cook, J., concurring). "'Although both TUUNAA and the common-law state that a member of a nonprofit association is not liable for the association's contracts merely because he is a member,' the common law still attached liability to members who expressly or tacitly ratified the actions of the association." *Greco*, 116 F. Supp. 3d at 759 n.9 (quoting *MT Falkin Invs.*, 400 S.W.3d at 665). TUUNAA, in contrast, did away with "all forms of vicarious liability." *Id.* at 759 n.9 (quoting *MT Falkin Invs.*, 400 S.W.3d at 666). "As a result, an individual can no longer be liable for an associations' actions "merely because the person is a member, is authorized to participate in the management of the affairs of the nonprofit association, or is a person considered as a member by the nonprofit association." *Id.* at 759 n.9 (quoting Tex. Bus. Orgs. § 252.006(b)).

Before TUUNAA was enacted, "unincorporated charitable associations" were defined as "those associations organized and operated for charitable, religious, recreational or educational purposes, as well as any other bona fide nonprofit association organized and operated for the promotion of social welfare by being primarily engaged in the common good and the general welfare

**Memorandum Opinion and Order – Page 7**

of people in a community." *Cox*, 836 S.W.2d at 169 n.1. Courts now apply TUUNAA's definitions. *Greco v*, 116 F. Supp. 3d at 760 n.10 (citations omitted). TUUNAA defines "[m]ember" as "a person who, under the rules or practices of a nonprofit association, may participate in the selection of persons authorized to manage the affairs of the nonprofit association or in the development of policy of the nonprofit association." § 252.001(1). "Nonprofit association" refers to an "unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." § 252.001(2).

Here, the court cannot determine from Plaintiff's pleadings whether O'Rourke is protected from liability for BFT's actions under TUUNAA because the court does not have sufficient information to assess whether BFT qualifies as a nonprofit association or whether O'Rourke qualifies as a member of a nonprofit organization. As noted, the court can take judicial notice of undisputed matters of public record, and O'Rourke cites to a the website for the Federal Election Commission Committee and provides BFT's political campaign identification number C00501197. O'Rourke also notes the strict reporting requirements for campaign contributions under 52 U.S.C. §§ 30104 and 30114. At most, however, this only establishes that BFT is a "principal campaign committee" that is subject to strict campaign contribution reporting requirements without providing the information needed by the court to determine whether a "principal campaign committee" qualifies as a nonprofit association and whether O'Rourke qualifies as a member of a nonprofit association as those terms are defined by TUUNAA.

The court also disagrees with O'Rourke's contention that Plaintiff's failure to dispute whether BFT qualifies as nonprofit association or unincorporated organization in response to the motion to dismiss can be construed as an admission or concession that BFT is such or that Plaintiff

**Memorandum Opinion and Order – Page 8**

has the burden to disprove BFT's organizational status in response to a motion to dismiss under Rule 12(b)(6). To the extent O'Rourke contends that BFT is an nonprofit association or unincorporated organization for purposes of TUUNAA based on the Fifth Circuit's opinion in *Karl Rove & Company*, its reliance of *Karl Rove & Company* is misplaced, as that case was based on Texas common law before the enactment of TUUNAA and was superseded by TUUNAA, which, as explained, includes statutory definitions for nonprofit associations and members of nonprofit associations.

In addition, the court notes that the parties' contentions regarding any alleged termination of BFT as an unincorporated nonprofit association after the 2018 election is irrelevant because the issue of whether O'Rourke can be held liable for BFT's actions in 2018 will turn not on BFT's current status an entity, but, instead, on its and O'Rourke's statuses when BFT allegedly violated the TCPA in 2018. Finally, O'Rourke contention that Plaintiff's pleadings impermissibly lump all Defendants together by referring to them collectively as "Defendants" without differentiating between them is not a basis for dismissal under Rule 12(b)(6), as Plaintiff's TCPA claim is not subject to Rule 9(b)'s pleading requirements, O'Rourke did not move for a more definite statement on this ground, and any concern in this regard can be answered by the parties through the discovery process. Accordingly, for all of these reasons, the court will deny Defendant Beto O'Rourke's Motion to Dismiss (Doc. 19), as it determines that the key issues regarding BFT's and O'Rourke's status and the applicability of TUUNAA are more appropriate for resolution in the context of a summary judgment motion.

## III. Conclusion

For the reasons explained, the court **denies** Defendant Beto O'Rourke's Motion to Dismiss (Doc. 19).

**It is so ordered** this 4th day of September, 2019.

_____
Sam A. Lindsay
United States District Judge